KAREN NELSON MOORE, Circuit Judge;
concurring in part and dissenting in part.
I dissent in part because I would affirm the denial of qualified immunity for JoAnn Friedt and Rina Becher for the following reasons.
The majority’s reliance on the brevity of Friedt’s one-shift-long involvement with Clark to decide that Friedt was entitled to qualified immunity erroneously disregards other factors relevant to this inquiry, such as the Defendant’s position and expertise and the severity of distressing behavior that she saw Clark display. Friedt’s awareness of Clark’s seizure, which was noted on the Roberta-R Form that Friedt received and read, carries enhanced significance because she is a registered nurse who admitted at her deposition that seizures can be “life[-]threatening” and that she could not assess whether the seizure was of medical concern without seeing Clark. Joint Appendix at 2782 (Friedt Dep. at 38). Although the majority further concludes that Friedt did not ignore a serious risk to Clark’s health because Officer Thelen told Friedt that Clark did not require medical care, Friedt knew that Thelen did not have medical expertise, and given Friedt’s own training, Friedt should have taken further action to assess Clark’s health. The majority’s conjecture that “[q]uite possibly, on this record, Friedt reasonably could have done nothing more,”[1] Majority Opinion (“Maj.Op.”) at 290, is flatly contradicted by the record. Friedt herself testified that when she gets a call from a resident unit officer regarding a medical concern relating to a prison *294 er, as she did from Sergeant Mike Harvey, she has three options: talking to the prisoner on the phone, seeing the prisoner on his unit, or having the prisoner come to the clinic. In this instance, Friedt chose none of these courses of conduct, and instead, opted to do nothing.
The majority attempts to absolve Friedt’s inaction by asserting that Friedt had no responsibility to respond to a prisoner’s potentially life-threatening health risk because she was made aware of this risk by prison paperwork that is ordinarily used for psychological rather than medical health issues. This amounts to a rule that a prison’s medical-care personnel can turn a blind eye to health-care concerns placed before them. This is precisely what the Eighth Amendment disallows: “deliberate indifference” to “a substantial risk of serious harm” to a prisoner’s health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Friedt, a medical professional, ignored a fact that she knew indicated a potential serious health risk — a seizure — that may have required immediate medical care. Therefore, that a health-care contact sheet had not been prepared and that the hospital was not contacted is irrelevant in the face of concrete facts that Clark might have been confronting a serious health risk that required prompt medical attention.
Regardless of whether and when Psychologist Mark Fox or any other mental health professional saw Clark, because Friedt knew of Clark’s seizure, she knew that he may have required medical attention.[2] As in Comstock v. McCrary, the circumstances reveal that Friedt should have investigated Clark’s condition before determining that he did not require immediate care, and her decision not to do so amounts to deliberate indifference. See Comstock v. McCrary, 273 F.3d 693, 707-08 (6th Cir.2001). Therefore, Friedt’s decision not to see Clark, particularly when she knew that he would not be seen by someone from psychological services that day, smacks of reckless disregard for the health risks he may have been facing.
The majority again relies too heavily on the extent of Becher’s contact with Clark to determine whether she ignored a significant health risk. Although Becher worked only one shift in the time between Clark’s collapse and his death, she observed Clark “pacing back and forth naked and telling me he was selling candy canes.” Joint Appendix at 2107 (Becher Dep. at 20). One would expect that this behavior is sufficiently bizarre to arouse great concern in anyone witnessing it. Moreover, although Becher testified at her deposition that she was unaware that there was a heat alert, that the water in Clark’s cell was off, and that Clark was experiencing a mental disturbance, other statements made during her deposition cast doubt on these self-serving assertions. Given that a factfinder may determine that “ ‘a prison official had the requisite knowledge of a substantial risk ... [by] inference from *295 circumstantial evidence,’ ” including “ ‘from the very fact that the risk was obvious,’ ” LeMarbe v. Wisneski, 266 F.3d 429, 436 (6th Cir.2001) (quoting Farmer v. Brennan, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); see also Majority Op. at 290, Becher has not put forth sufficient evidence to show that she was not aware of the health risks Clark faced, and thus she should not be dismissed from the case.
For the foregoing reasons, I would affirm the district court’s denial of qualified immunity to Friedt and Becher, and accordingly I dissent in part.

. The majority’s willingness to infer facts in favor of Defendant Friedt, a moving party, as evidenced by this statement and the majority’s assumption that Friedt “could have deduced that the situation with Clark was under control,” Maj. Op. at 290, contravenes our obligation, in reviewing the grant of a motion for summary judgment, to "view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party.” Cockrel v. Shelby County Sch. Dist., 270 F.3d 1036, 1048 (6th Cir.2001).

. The majority notes that the Plaintiff "has offered no theory of liability or damages relating to the fact that [Psychologist] Fox did not see Clark until the next day.” Maj. Op. at 290. This reasoning seems out of place given that the majority does not require the Plaintiff to make such a robust showing of specific causation and damages regarding the other Defendants in this case. In fact, the majority expressly criticizes that "defendánts pin much of their defense on the fact that they (or others) had completed psychological-referral forms” because "prison rules required officers to go up the chain of command if they felt that a referral had not secured the requisite assistance for an inmate.” Id. at 289. In any event, it does not require much speculation to conclude that had Friedt seen Clark, she would have gotten him proper treatment, and perhaps he would have survived or at least avoided some degree of suffering.